1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY M. BLACKWELL,

11           Petitioner,                    No. 2:06-cv-1876 RRB GGH P

12       vs.

13   RODERICK Q. HICKMAN,

14           Respondent.                    FINDINGS & RECOMMENDATIONS

15   _____/

16   ANTHONY M. BLACKWELL,

17           Petitioner,                    No. 2:10-cv-2316 RRB GGH P

18       vs.

19   JAMES WALKER,

20           Respondent.                    FINDINGS & RECOMMENDATIONS

21   _____/

22   I. Introduction

23           Petitioner in both cases, a state prisoner proceeding pro se, has filed an application

24   for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The above two cases were

25   consolidated on January 20, 2011.  Petitioner filed a motion to stay in the 2006 case to exhaust

26   additional claims.  When all claims were exhausted, petitioner filed a new petition, the 2010

                                            1

case, rather than in the stayed case.  Thus, both cases involve the exhausted petition filed on August 27, 2010, in case No. 2:10-cv-2316 RRB GGH P.  Doc. 1.  Respondent filed an answer on August 9, 2011, and petitioner filed a traverse on September 7, 2011.

Petitioner was convicted of multiple counts of attempted voluntary manslaughter, attempted robbery and various other related crimes.  Petitioner was sentenced to a determinate term of nine years and four months in state prison and an indeterminate, consecutive term of twenty-five years to life.[1]  Petitioner raises the following claims in this petition: (1) the superior court in ruling on his state habeas petition erred in refusing to reverse his convictions for attempted voluntary manslaughter and assault with a firearm; (2) the court of appeal erred in refusing to decide whether the use of his juvenile adjudications to enhance his sentence violated his constitutional rights; (3) he received ineffective assistance of appellate counsel when his counsel failed to raise on appeal the issue that co-defendant Coilton successfully raised; and (4) the trial court infringed on his constitutional rights when it found witness Watkins to be unavailable and allowed her preliminary hearing testimony to be admitted at trial.

II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] As will be discussed below, the state court vacated some of the convictions and petitioner was resentenced to twenty four years and ten months.  Lodged Document (Lod. Doc.) 35.

2

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of
> the evidence presented in the State court
> proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S.Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, supra, 131 S.Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004). Accordingly, "a habeas court must determine what arguments or theories supported or . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this

standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id</u>., citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

The undersigned also finds that the same deference is paid to the factual determinations of state courts.  Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination.  A petitioner must show clearly and convincingly that the factual determination is unreasonable.  <u>See</u> <u>Rice v. Collins</u>, 546 U.S. 333, 338, 126 S.Ct. 969 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. <u>Woodford v. Viscotti</u>, 537 U.S. 19, 123 S. Ct. 357 (2002).  Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  <u>Harrington</u>, <u>supra</u>, 131 S.Ct. at 786-787.  "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. <u>Wright v. Van Patten</u>, 552 U.S. 120, 125, 128 S.Ct. 743 (2008).  Thus, extrapolations of settled law to unique situations will not qualify as clearly established.  <u>See</u> <u>e.g.</u>, <u>Carey v. Musladin</u>, 549 U.S. 70, 76, 127 S.Ct. 649 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when

1  spectators' conduct is the alleged cause of bias injection).  The established Supreme Court

2  authority reviewed must be a pronouncement on constitutional principles, or other controlling

3  federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts.

4  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362 (2002).

5          The state courts need not have cited to federal authority, or even have indicated

6  awareness of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8.  Where

7  the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the

8  federal court will independently review the record in adjudication of that issue.  "Independent

9  review of the record is not de novo review of the constitutional issue, but rather, the only method

10  by which we can determine whether a silent state court decision is objectively unreasonable."

11  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

12          Finally, if the state courts have not adjudicated the merits of the federal issue, no

13  AEDPA deference is given; the issue is reviewed *de novo* under general principles of federal law.

14  James v. Ryan, 679 F.3d 780, 802-803 (9th Cir. 2012).

15  III.  Background

16          The California Court of Appeal set forth the following factual summary that the

17  court adopts below.

18      Antonio and Gerardo Moreno and their nephew, Ruben, were doing landscaping
        work at a neighbor's house. While they were taking a break, codefendant Bridget
19      Coilton and another woman drove up to the house in a gray Toyota Corolla and
        offered the Morenos sex for money.  The Morenos declined the offer, and one of
20      the women asked Gerardo for $5.  Gerardo again refused, but said he would treat
        them to a beer.  The women and Gerardo went to the store and Gerardo bought
21      them beer.

22      The trio returned to the house and again the women sexually propositioned the
        Morenos.  The Morenos again declined the offer, but one of the women who was
23      sitting on Antonio's lap grabbed his back pocket which contained $350 folded
        over.  Antonio refused to give the women the money, as it was for the landscaping
24      job they were doing.  The women left the house, and Antonio thought they were
        angry when they left, as they slammed the door of the car.

25
        Coilton, Tasheba Shon't Watkins, and [petitioner's] sister were residents of the
26      same apartment complex.  Watkins considered Coilton a good friend.  Coilton and

                                            5

petitioner also "hung out" together at the apartment complex. On the day of the robbery, Watkins saw Coilton drive up to the complex in a gray car, possibly a Toyota.

When Coilton got out of the car, she spoke with Watkins and told her she had some type of "come up," a way to get some money. She also said "she had a trick with some Mexicans that had bought her some beer." Later, Watkins heard Coilton speaking on the phone and heard Coilton say, "I got a 'lick.' [FN3]. Do you want to do it?" Watkins also heard Coilton say she was going to get a condom, which Watkins understood was going to be used "to do a trick." Watkins understood this "trick" to be one of the Morenos. A few minutes later, [petitioner] came down from his sister's apartment and got in the car with Coilton and at least one other person.

FN3. A "lick" is slang for a robbery or theft. (People v. Cummins (2005) 127 Cal.App.4th 667, 673.) Watkins testified it means to take some money from someone.

About 20 minutes after Coilton and her friend had left the house where Antonio and Gerardo were working, [petitioner] arrived with a loaded .45 handgun. Gerardo had seen Coilton's car pass by the house about 10 minutes before [petitioner] arrived. Antonio was sitting on a box in the living room. [Petitioner] walked through the door and shot Antonio three times. The first two shots grazed him on either side of his head and the third shot entered his neck just below his chin. Antonio did not recall [petitioner] asking for money from him before he was shot. Since Gerardo was in the bathroom at the time the shooting started, he also did not hear a demand for money.

Antonio attempted to defend himself. Gerardo came out of the bathroom and came to his brother's aid. Despite his efforts, Gerardo was shot in the leg. However, in the struggle with [petitioner], Antonio pulled a clump of hair from his head. DNA testing established the hair was from [petitioner].

Gerardo continued to fight with [petitioner] and [petitioner] ultimately ran from the house and left the scene on a bicycle. Antonio's nephew, who had seen Coilton arrive the first time, saw Coilton's gray Toyota departing the area.

Approximately an hour after Coilton and [petitioner] left the apartment complex, Watkins saw Coilton return. She was hysterical. Coilton told Watkins they had gone to the house where the Mexicans were to get money, and "something didn't go right, and one of the Mexicans got shot." She also said something about a robbery gone bad. She said that when the Mexicans had refused to give up the money, that's when the shooting occurred. She also mentioned seeing one of the men come out of the bathroom or another room in the house after the shots were fired and that there had been some kind of struggle.

Watkins also saw [petitioner] at the complex and noticed he had blood spots on his shirt.

Also, police received a phone call shortly after the shooting from Shon't (Watkins's middle name) that the attempted murder was a "dating thing and a

1    robbery gone bad."

2    People v. Blackwell, 2006 WL 532056, *1-2.[2]

3              Due to the complicated nature of the state court proceedings a detailed procedural

4    background will also be provided.  Petitioner was convicted by a jury of attempted voluntary

5    manslaughter of Antonio Moreno, along with finding that during the commission of the offense

6    petitioner used a firearm and personally inflicted great bodily injury; attempted voluntary

7    manslaughter of Gerado Moreno, along with a finding that petitioner personally used a firearm

8    during the commission of the offense; attempted robbery of Antonio Moreno, with the finding

9    that during the commission of the offense he discharged a firearm which caused great bodily

10   injury, that petitioner personally and intentionally discharged a firearm, that petitioner personally

11   used a firearm and that he personally inflicted great bodily injury; the attempted robbery of

12   Gerardo Moreno, along with true findings that during the commission of the offense he

13   personally and intentionally discharged a firearm, and personally used a firearm; assault with a

14   firearm on Antonio Moreno, along with a true finding that he personally used a firearm during

15   the commission of the offense; and assault with a firearm on Gerardo Moreno, along with a true

16   finding that he personally used a firearm during the commission of the offense.  As a result

17   petitioner was sentenced to a determinate term of nine years and four months in state prison and

18   an indeterminate, consecutive term of twenty-five years to life.

19             While the instant federal petition was proceeding, petitioner filed a habeas petition

20   in the Sacramento County Superior Court on December 4, 2006.  Lod. Doc. 7.  He raised the

21   following claims: (1) he received ineffective assistance of appellate counsel because his counsel

22   failed to raise the issue on appeal that his codefendant, Coilton, had successfully raised (a claim

23   that the trial court erred when it admitted the preliminary hearing testimony of Watkins, a key

24

25   [2] This statement of facts contains information based on the testimony of Tasheba Shon't
     Watkins, testimony that the superior court later found was improperly admitted.  Watkins was
     unavailable to testify at trial so her testimony from a preliminary hearing was admitted.  The
26   results of the superior court's ruling will be discussed at length below.

1   prosecution witness, after finding that Watkins was unavailable to testify at trial); and (2) the trial

2   court infringed on his constitution right to confrontation when it admitted Watkins' preliminary

3   hearing testimony at trial.  Lod. Doc. 7.

4          On March 26, 2007, the superior court granted the petition and vacated the

5   attempted robbery convictions after finding that Watkins' testimony was improperly admitted

6   and without the testimony there was insufficient evidence to establish that petitioner attempted to

7   rob the victims prior to shooting them.  Lod. Doc. 10 at 2-6.  The court denied the petition as it

8   related to the attempted voluntary manslaughter and assault with a firearm convictions.  Id. at

9   5-6.  The court then set the matter for resentencing.  Id. at 6.  Petitioner was resentenced to

10  twenty four years and ten months.  Lod. Doc. 35.  Petitioner filed many more appeals and state

11  habeas petitions regarding the remaining counts and his resentencing, but no more relief was

12  granted.

13  IV.  Argument & Analysis

14              Claim 1 - Attempted Voluntary Manslaughter

15          Petitioner contends that his attempted voluntary manslaughter and assault with a

16  firearm convictions should have been reversed because he was prejudiced by the erroneous

17  introduction of Watkins' preliminary hearing testimony at trial, when it was found she was

18  unavailable to testify.  However, petitioner received the benefit already of having Watkins'

19  testimony excised, and his conviction was upheld nevertheless by the state courts.  It thus appears

20  petitioner is arguing that there was insufficient evidence, once the preliminary hearing testimony

21  of Watson is discounted, to have found him guilty of the attempted manslaughter and assault

22  counts.

23              Legal Standard

24          When a challenge is brought alleging insufficient evidence, federal habeas corpus

25  relief is available if it is found that upon the record evidence adduced at trial, viewed in the light

26  most favorable to the prosecution, no rational trier of fact could have found "the essential

8

elements of the crime" proven beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781 (1979).  Jackson established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence.  U.S. v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc).  First, the court considers the evidence at trial in the light most favorable to the prosecution.  Id., citing Jackson, 443 U.S. at 319.  "'[W]hen faced with a record of historical facts that supports conflicting inferences," a reviewing court 'must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  Id., quoting Jackson, 443 U.S. at 326.

"Second, after viewing the evidence in the light most favorable to the prosecution, a reviewing court must determine whether this evidence, so viewed is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'"  Id., quoting Jackson, 443 U.S. at 319.  "At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt."  Id.

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination.  Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

Analysis

Following the partial grant by the Sacramento County Superior Court, petitioner filed several other petitions with the California Court of Appeal and California Supreme Court seeking reversal of the attempted manslaughter and assault counts.  Lod, Docs. 18, 22.  Those petitions were denied without reasoned opinions.  Lod. Docs. 21, 23.  Because the state Court of Appeal and California Supreme Court orders were summary denials, the court must look through

9

1   to the last reasoned decision, in this instance, the denial by the Sacramento County Superior

2   Court.  When reviewing a state court's summary denial of a claim, the court "looks through" the

3   summary disposition to the last reasoned decision.  Shackleford v. Hubbard, 234 F.3d 1072, 1079

4   n. 2 (9th Cir. 2000), citing Ylst v. Nunnemaker, 501 U.S. 797, 803–04, 111 S.Ct. 2590 (1991).

5            The Sacramento County Superior Court opinion granting partial habeas relief

6   stated the following regarding petitioner's other counts, "[u]nlike codefendant, petitioner was

7   clearly established to have been the person who attacked and shot victims Antonio and Gerardo

8   Moreno."  Lod. Doc. 10 at 3.  While this is a rather conclusory analysis it is important to note the

9   Sacramento County Superior Court provided a more detailed analysis in a prior order to show

10  cause to respondent asking why the robbery convictions against petitioner should not be

11  dismissed, as the testimony regarding the robbery was improperly admitted.  The court noted the

12  differences between the prejudice to codefendant Coilton and petitioner:

> However, prejudice is not as clear as it was in codefendant's [Coilton] case.  It
> appears that petitioner was clearly established to have been the person who
> attacked and shot victims Antonio and Gerardo Moreno, as those victims gave
> admissible testimony regarding the attack and shooting and DNA evidence was
> admitted showing that the clump of hair that Antonio pulled from petitioner's
> head during the attack was that of petitioner.  Thus, even if Watkin's preliminary
> hearing testimony had not been admitted at trial, it appears there is no reasonable
> probability that the outcome of the trial would have been any different with regard
> to petitioner's convictions for attempted voluntary manslaughter of Antonio
> M[o]reno, with personal firearm use and personal infliction of great bodily injury,
> attempted voluntary manslaughter of Gerardo Moreno with personal firearm use,
> or assault with a firearm on Gerardo Moreno with personal firearm use.

20  Lod. Doc. 9 at 2-3.

21            Respondent first argues that this claim should be dismissed as procedurally

22  barred, as it was filed after the one year statute of limitations, however the undersigned will

23  instead look to the merits in denying this claim, that respondent has also briefed.  See Franklin v.

24  Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more

25  complex than the merits issues presented by the appeal, so it may well make sense in some

26  instances to proceed to the merits if the result will be the same.")).

1          The preliminary hearing testimony of Watkins that was admitted at trial was as

2    follows:

> In August 2003, she lived in the same fourplex as [codefendant Coilton] and
> [petitioner's] sister.  [Petitioner] and [codefendant Coilton] were "hanging out
> there" in August 2003.  One day that August, [codefendant Coilton] came to
> Watkins's apartment and told her that defendant had a "trick" with some Mexicans
> who bought her beer.  Watkins overheard [codefendant Coilton] tell someone over
> the phone: "I got a lick. Do you want to do it?"  A "lick" means "[t]o take some
> money from someone."  [Codefendant Coilton] left the apartment and went
> downstairs.  A couple of minutes later, Watkins saw [petitioner] go down the
> stairs and speak to [codefendant Coilton]. [Petitioner] and [codefendant Coilton]
> then left in a "small, gray older four-door car," possibly a Toyota.  An hour later,
> [codefendant Coilton] came by Watkins's apartment.  She was "hysterical" and
> told Watkins that [codefendant Coilton] went inside a house where "the
> Mexicans" were, she asked them for some money, they refused, and "one of the
> Mexicans got shot."  Watkins confirmed that her middle name is "Shon't," but
> said that she never uses it as a first name.  She denied providing information to
> police because [codefendant Coilton] "snitched" on Watkins in the past.
> According to Watkins, she contacted the police because [codefendant Coilton]
> "asked me to."

13   People v. Coilton, 2005 WL 1556917 *2

14          Without this testimony the California Court of Appeal set forth the following

15   factual summary that the court adopts below and is confirmed after a thorough review of the

16   record:

> In August, 2003, the Moreno brothers, Antonio and Gerardo, were working at a
> neighbor's home when co-defendant Bridget Coilton and another woman offered
> the Morenos sex for money.  Although the Morenos declined the women's offer,
> they did agree to share some beer with them. After sharing the beers, the women
> left.
>
> About 15-20 minutes later, [petitioner] arrived at the house with a loaded .45
> handgun.  He walked through the door and without speaking, shot Antonio
> Moreno three times.  Antonio and [petitioner] struggled, during which Antonio
> pulled a clump of hair from [petitioner's] head.  DNA established the hair was
> [petitioner's].  Gerardo then came out of the bathroom and continued to fight
> with [petitioner].  During their struggle, [petitioner] also shot Gerardo.
> [Petitioner] then fled the house.  Antonio had been shot with two grazing shots on
> either side of his head and a third shot entered his neck just below his chin.
> Gerardo was shot in the leg

25   People v. Blackwell, 2009 WL 82573 at *1.

26   \\\\\

11

1    Petitioner argues that as Watkins' testimony was improperly admitted, there was

2   insufficient evidence for the jury to find him guilty of the remaining counts of attempted

3   voluntary manslaughter and assault with a firearm.  Ultimately, petitioner has failed to

4   demonstrate that the state court opinion was contrary to established Supreme Court authority nor

5   has petitioner shown that the evidence, viewed in the light most favorable to the prosecution, no

6   rational trier of fact could have found "the essential elements of the crime" proven beyond a

7   reasonable doubt.  As the state court noted, the victims testified that a man came into the house

8   where they were working and shot them.  The DNA evidence of the hair pulled from the assailant

9   placed petitioner at the scene as the shooter.  Reporter's Transcript (RT) at 208-09.  A witness for

10  codefendant Coilton testified that she saw petitioner outside of the house where the incident

11  occurred, heard gunshots and the observed petitioner leaving the house.  RT at 255-61.[3]  While

12  petitioner did not testify, in closing arguments petitioner's counsel stated that petitioner was the

13  shooter, but he entered the house, was assaulted by the victims, pulled out his gun while being

14  punched and kicked and shot the victims in self defense so he could escape.  RT at 351.  The jury

15  was given instructions for self defense.  Clerk's Transcript (CT) at 267-73.

16    In the instant federal petition, petitioner argues that without Watkins' testimony,

17  the jury would have heard that, "petitioner would appear to have stumbled into the wrong house,

18  got attacked and reasonably defended himself."  Petition at 7.  While petitioner is of course free

19  to set forth this theory in the instant petition, he has failed to demonstrate that viewed in the light

20  most favorable to the prosecution, no rational trier of fact could have found "the essential

21  elements of the crime," attempted voluntary manslaughter and the other related counts, proven

22  beyond a reasonable doubt.  Unlike simple voluntary manslaughter which does not even require

23  an intent to kill, People v. Lasko, 23 Cal. 4th 101, 96 Cal. Rptr. 2d 441 (2000), *attempted*

24  voluntary manslaughter requires an intent to kill.  People v. Montes, 112 Cal. App. 4th 1543, 5

25  _____

26  [3] The witnessed was called by codefendant Coilton and testified that she did not observe
    Coilton at the scene.  RT at 252.

Cal. Rptr. 3d 800 (2003).  Notwithstanding the stricter element for attempted voluntary manslaughter, the evidence shouted out intent to kill.  The evidence demonstrated that petitioner walked into the house, where he did not live, where the victims had been performing work and shot them.[4]

Nor does the lack of the robbery motive upset the jury verdict as attempted voluntary manslaughter does not depend on the precise derivation of the dispute leading to the killing.  RT at 276.  Regardless of the reasons why petitioner entered the house, he did in fact intentionally shoot the two victims.

In a perverse sense, there was a seeming lack of evidence of attempted voluntary manslaughter only because there was not presented evidence of heat of passion, Cal. Penal Code § 192, nor significant evidence of imperfect self-defense, see In re Christian S., 7 Cal. 4th 768 , 30 Cal. Rptr. 2d 33 (1994) – the very items that would inure to petitioner's benefit in reducing the offense from murder to voluntary manslaughter.  It is possible that the facts surrounding possible robbery, prostitution and the involvement of the victims with the prostitutes led the jury to choose the lesser charge.  If that is accurate then the Watkins' testimony at trial helped petitioner avoid an attempted murder conviction, as without the robbery component, there was less focus on the prostitution and simply the fact that petitioner entered the house and shot the victims.  Perhaps the jury was confused by the defense argument that the precise position of petitioner as he shot the first victim indicated some type of self-defense.  But, in any event, petitioner could not have been prejudiced by the undeserved windfall he received from the jury from the admission of Watkins' testimony because without it, the evidence would surely have been

---

[4] After reviewing the trial transcript there is little, if any, evidence to support the jury being given a self defense instruction.  Counsel's argument of self defense in closing arguments is not evidence and cannot alone support a self defense instruction.  The first victim testified that the assailant walked in and shot him immediately (RT at 64) and the testimony of the second victim concerning when a gun was drawn was inconclusive (RT at 130) and regardless he only arrived after the initial shots were fired. There was no evidence that the victims initiated deadly force actions against petitioner, and then he fired back to save his life.   In any event, the jury rejected self-defense.

1   sufficient for murder – the unadorned, attempted killing of two people with express malice.  See

2   People v. Montes, supra, contrasting murder and voluntary manslaughter.  Plainly put, if the

3   evidence was sufficient for murder, it was also sufficient for the lesser charge of attempted

4   voluntary manslaughter.  See People v. Barton, 12 Cal. 4th 186, 199, 47 Cal. Rptr. 2d 569 (1995)

5   (voluntary manslaughter is a lesser included offense within murder).  Although the evidence

6   supporting attempted voluntary manslaughter as opposed to second degree murder is not apparent

7   to this writer, the defense did not object to such instructions and indeed argued a form of self-

8   defense.  The jury's possibly errant verdict *in his favor* on the requested lesser offense cannot

9   stand as a grounds for throwing out the entire conviction.

10        The jury verdict, even without the Watkins testimony, was sufficient and

11   ultimately petitioner has failed to demonstrate the state court's decision upholding the conviction

12   was AEDPA unreasonable.  Therefore, this claim should be denied.

13        Claim 2 - Upper Term Sentence

14        Petitioner next contends that the trial court's use of his juvenile record as a basis

15   for imposing an upper term sentence violated the Sixth and Fourteenth Amendment.

16        Legal Standard

17        In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), the United

18   States Supreme Court held as a matter of constitutional law that, other than the fact of a prior

19   conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory

20   maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.

21   In Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2431 (2004), the Supreme Court held that the

22   "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely

23   on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Blakely, 542

24   U.S. at 303.  There is a narrow exception to this rule, however, for enhancements that are based

25   on prior convictions; these need not be submitted to the jury.  See Almendarez-Torres v. United

26   States, 523 U.S. 224, 244, 118 S.Ct. 1219 (1998) ("[T]o hold that the Constitution requires that

1  recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from

2  a longstanding tradition of treating recidivism as 'go[ing] to punishment only.'"); <u>Butler v.</u>

3  <u>Curry</u>, 528 F.3d 624, 641 (9th Cir. 2008).

4       In <u>People v. Black</u>, 35 Cal. 4th 1238 (2005) ("<u>Black</u> I"), the California Supreme

5  Court held that California's statutory scheme providing for the imposition of an upper term

6  sentence did not violate the constitutional principles set forth in <u>Apprendi</u> and <u>Blakely</u>. The

7  court in <u>Black I</u> reasoned that the discretion afforded to a sentencing judge in choosing a lower,

8  middle or upper term rendered the upper term under California law the "statutory maximum."

9  <u>Black I</u>, 35 Cal. 4th at 1257-61.

10       In <u>Cunningham v. California</u>, 549 U.S. 270, 127 S.Ct. 856 (2007)[5], the United

11  States Supreme Court held that a California judge's imposition of an upper term sentence based

12  on facts found by the judge (other than the fact of a prior conviction) violated the constitutional

13  principles set forth in <u>Apprendi</u> and <u>Blakely</u>. <u>Cunningham</u> expressly disapproved the holding

14  and the reasoning of <u>Black I</u>, finding that the middle term in California's determinate sentencing

15  law was the relevant statutory maximum for purposes of applying <u>Blakely</u> and <u>Apprendi</u>.

16  <u>Cunningham</u>, 549 U.S. at 291-94.[6]

17       In light of <u>Cunningham</u>, the Supreme Court vacated <u>Black I</u> and remanded the

18  case to the California Supreme Court for further consideration. <u>Black v. California</u>, 549 U.S.

19  1190 (2007). On remand, the California Supreme Court held that "so long as a defendant is

20  eligible for the upper term by virtue of facts that have been established consistently with Sixth

21  Amendment principles, the federal Constitution permits the trial court to rely upon any number

22  of aggravating circumstances in exercising its discretion to select the appropriate term by

23   

24     [5]  The Ninth Circuit subsequently held that <u>Cunningham</u> may be applied retroactively on collateral review. <u>Butler v. Curry</u>, 528 F.3d 624, 639 (9th Cir. 2008).

25     [6] The effect of <u>Cunningham</u> is much dissipated in that the California legislature,

26  subsequent to <u>Cunningham,</u> provided that the upper term was the statutory maximum. <u>See</u> <u>People v. Sandoval</u>, 41 Cal. 4th 825, 845 (2007).

1   balancing aggravating and mitigating circumstances, regardless of whether the facts underlying

2   those circumstances have been found to be true by a jury." People v. Black, 41 Cal. 4th 799, 813

3   (2007) (Black II).  In other words, as long as one aggravating circumstance has been established

4   in a constitutional manner, a defendant's upper term sentence withstands Sixth Amendment

5   challenge.

6          Thereafter, relying on Black II, the Ninth Circuit confirmed that, under California

7   law, only one aggravating factor is necessary to authorize an upper term sentence.  Butler v.

8   Curry, 528 F.3d 624, 641-43 (9th Cir. 2008).

9          With respect to use of juvenile adjudications, the Ninth Circuit held in United

10   States v. Tighe that:

11          [T]he "prior conviction" exception to Apprendi's general rule must
            be limited to prior convictions that were themselves obtained
12          through proceedings that included the right to a jury trial and proof
            beyond a reasonable doubt.  Juvenile adjudications that do not
13          afford the right to a jury trial and a beyond-a-reasonable-doubt
            burden of proof, therefore, do not fall within Apprendi's "prior
14          conviction" exception.

15   266 F.3d 1187, 1194 (9th Cir. 2001).

16          Other federal circuit courts of appeal considering the issue have reached a

17   different conclusion.  See, e.g., United States v. Smalley, 294 F.3d 1030, 1032 (8th Cir. 2002).

18   The Ninth Circuit has recognized that the Third, Eighth, and Eleventh Circuits, in addition to

19   California state courts, have held that the Apprendi "prior conviction" exception includes

20   non-jury juvenile adjudications, which can be used to enhance a defendant's sentence.  See Boyd

21   v. Newland, 467 F.3d 1139, 1152 (9th Cir. 2006) ( "Tighe ... does not represent clearly

22   established federal law ...").  "[I]n the face of authority that is directly contrary to Tighe, and in

23   the absence of explicit direction from the Supreme Court, we cannot hold that the California

24   courts' use of Petitioner's juvenile adjudication as a sentencing enhancement was contrary to, or

25   \\\\\

26   \\\\\

16

involved an unreasonable application of, Supreme Court precedent." Boyd, 467 F.3d at 1152.[7]

Discussion

Petitioner raised this issue in the state court following the robbery convictions being vacated by the superior court and petitioner's resentencing. Petitioner filed a habeas petition in the Court of Appeal and the ruling set forth the relevant sentencing background and law:

> [Petitioner] was resentenced on the attempted voluntary manslaughter and assault convictions, as well as their attendant enhancements. The court noted that prior convictions and adjudications are a basis upon which a judge can aggravate a sentence without findings being made by a jury. The court specifically stated, "I have, uh, again, looked at the past probation report that was submitted in this case and filed on August 27, 2004, which recounts, uh, [petitioner's] criminal history beginning in 1995, in the juvenile system, and through 2002 when he, in fact, uh, suffered two adult convictions, one of which is a matter for sentencing case [ sic ] because it was a probation case that he had previously been sentenced to. [¶] And I think, based on all of those, ... the number and seriousness and the voluminous nature of [petitioner's] criminal background, notwithstanding his age, weighs much more heavy than any youthfulness he may have been [ sic ] at the time this serious felony was committed. So I am going to rely in imposing the upper term on [petitioner's] on prior numerous [ sic ], as well as his criminal conviction as an adult, so that is as [ sic ] the court's judgment and sentence." Accordingly, the court imposed the upper term of five years and six months for the attempted manslaughter of Antonio (count one) and three years consecutive for the personal infliction of great bodily injury enhancement. (§ 12022 .7, subd. (a).) FN4 For the attempted manslaughter of Gerardo (count two), the court imposed a one-year term (one-third the midterm), to be run consecutively and imposed one year and four months (one-third the midterm) on the personal use of a firearm enhancement allegation under section 12202.5, subdivision (a)(1). FN5 On the probation violation, [petitioner] was again sentenced to the middle term of four years. FN6
>
> FN4. There appears to be an error in the reporter's transcript, as it indicates that [petitioner] will be sentenced to the "upper term of five years and six months, as to violating [ ] section 12022.5(a)(1), imposed mandatorily and consecutively." However, there is no term actually imposed as to section 12022.5. The abstract of judgment and minute order each reflect the imposition of a 10-year term for the section 12022.5 violation.
>
> FN5. There is no mention of the two assault convictions in the reporter's transcript. The abstract of judgment reflects that these counts and their attendant enhancements were stayed under section 654. The minute order indicates these

---

[7]   The undersigned notes that the California Supreme Court held that the use of nonjury juvenile adjudications to enhance an adult sentence does not violate Apprendi. People v. Nguyen, 46 Cal. 4th 1007, 1022 (2009).

counts were stayed under section 664 (which is obviously a typographical error).

FN6.  The reporter's transcript does not indicate whether this term was to run consecutively or concurrently.  The abstract of judgment and minute order indicate the term was to run concurrently.

DISCUSSION

[Petitioner] contends on appeal that the court improperly aggravated his sentence, based on his juvenile adjudications. [Petitioner] notes this issue is currently pending before the California Supreme Court in People v. Nguyen (2007) 152 Cal.App.4th 1205, review granted October 10, 2007, S154847.  However, we can resolve this matter without addressing the issue of reliance upon juvenile adjudications as aggravating factors.

If a single aggravating circumstance is established "in accordance with the constitutional requirements set forth in Blakely, the defendant is not 'legally entitled' to the middle term sentence, and the upper term sentence is the 'statutory maximum .'" (People v. Black (2007) 41 Cal.4th 799, 813 (Black.)  In other words, if there is a single aggravating circumstance that satisfies Blakely, "any additional factfinding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial." (Black, supra, at p. 812.)

The prior conviction exception to the right to a jury trial on sentencing factors encompasses the circumstance that a defendant committed a crime while on probation.  (People v. Towne (2008) 44 Cal.4th 63, 79-82 (Towne).)  This is so because it is a circumstance that "arises out of a prior conviction and results from procedures that were conducted in accordance with constitutional requirements designed to ensure a fair and reliable result.  Furthermore, the circumstance of ... probation or parole status ordinarily is well documented in the same type of official records used to establish the fact and nature of a prior conviction...." (Id. at p. 81.)  Thus, in determining whether a defendant committed an offense while on probation, "the trial court is not required to make any factual finding regarding the charged offense.  It need only determine the period during which the defendant was on probation or parole and compare those dates to the date of the charged offense, as found by the jury.  The trial court may find this aggravating circumstance to exist, without engaging in any factfinding regarding the charged offense.  Accordingly, a trial court's conclusion that the charged offense was committed while the defendant was on probation or parole, like a finding of a prior conviction, does not require judicial factfinding regarding the charged offense." (Id. at p. 80-81.)

In sum, "the aggravating circumstance that a defendant ... was on probation or parole at the time the crime was committed may be determined by a judge and need not be decided by a jury." (Towne, supra, 44 Cal.4th at p. 70-71.)

Here, to impose the aggravated term, the court indicated it was relying upon [petitioiner's] record of convictions and adjudications and further noted he was on probation at the time the current offenses were committed.  In addition, the court's indication that it would also be sentencing [petitioner] on his probation violation

which arose as a consequence of these offenses suggests the court was also considering [petitioner's] unsatisfactory performance while on probation.

Either [petitioner's] status as a probationer when he committed these offenses or his unsatisfactory performance on probation as a result of these convictions would have been enough alone to make [petitioner] eligible for the upper term. Each would validly serve as a basis for the upper term without having been submitted for a jury finding. Accordingly, the trial court's additional factfinding regarding aggravating circumstances did not violate [petitioner's] right to a jury trial (Black, supra, 41 Cal.4th at p. 812), and the court did not err in imposing the upper term.

People v. Blackwell, 2009 WL 82573 at *2-4.

The opinion of the Court of Appeal is not contrary to established Supreme Court authority, to the extent the trial court may have relied on petitioner's juvenile adjudications. The undersigned is bound by the Ninth Circuit's ruling in Boyd that the holding in Tighe is not clearly established federal law set forth by the Supreme Court. Boyd v. Newland, 467 F.3d 1139, 1152 (9th Cir. 2006). Therefore petitioner is not entitled to relief for this claim.

Regardless, it also appears the trial court relied on the fact of petitioner's status on probation to impose the upper term, which is permissible. While the Ninth Circuit has held that a sentencing court's determination that an offense was committed while the defendant was on probation does not come within the prior offense exception, Butler v. Curry, 528 F.3d 624, 641 (9th Cir. 2008), the court also concluded that the Butler holding is not clearly established Supreme Court law, so cannot be the basis for federal habeas relief, Kessee v. Mendoza–Powers, 574 F.3d 675, 679 (9th Cir. 2009). For all these reasons, and as plaintiff has failed to demonstrate that the trial court's actions were contrary to established Supreme Court authority, this claim should be denied.

Claims 3 & 4

Petitioner states that appellate counsel was ineffective for failing to raise the issue that Watkins' testimony was improperly admitted and petitioner states that his rights were violated by the admission of Watkins' testimony. However, habeas relief has already been provided on these claims by the Sacramento Superior Court. Because petitioner obtained the

relief he was seeking from the state court, there is no further relief for this court to grant.
Calderon v. Moore, 518 U.S. 149, 150, 116 S.Ct. 2066 (1996) (appeal should be dismissed as
moot when a court of appeals cannot grant " 'any effectual relief whatever' " in favor of the
appellant); Burnett v. Lampert, 432 F.3d 996, 1000-01 (9th Cir. 2005) (habeas petition is moot
when a favorable decision of the court would not offer petitioner any relief); Cumbo v. Eyman,
409 F.2d 400 (9th Cir. 1969) (state court's reversal of convictions challenged in federal habeas
petition moots federal proceedings).  Therefore, these claims should be dismissed as moot.  To
the extent petitioner argues his other convictions should be reversed because of these errors, the
undersigned has analyzed those arguments above.

       Accordingly IT IS HEREBY RECOMMENDED that petitioner's application for a
writ of habeas corpus be denied.

       If petitioner files objections, he shall also address if a certificate of appealability
should issue and, if so, as to which issues.  A certificate of appealability may issue under 28
U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a
constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate
which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

       These findings and recommendations are submitted to the United States District
Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen
days after being served with these findings and recommendations, any party may file written
objections with the court and serve a copy on all parties.  Such a document should be captioned
"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
shall be served and filed within seven days after service of the objections.  The parties are

\\\\\
\\\\\
\\\\\
\\\\\

1   advised that failure to file objections within the specified time waives the right to appeal the

2   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   Dated: August 11, 2012

4                                        /s/ Gregory G. Hollows
                                 UNITED STATES MAGISTRATE JUDGE
5
     ggh: ab
6    blac2316.hc

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26